## Case No. 2,758.

### The CITY OF NEW YORK.

[3 Blatchf. 187;[1] 12 N. Y. Leg. Obs. 300.]

Circuit Court, S. D. New York. Sept., 1854.

SUPPLIES IN FOREIGN PORT—CHARTERED VESSEL.

1. Under a charter of a steam vessel, by which the charterer becomes her owner for the voyage and charged with her navigation, the agent of the charterer can bind the vessel for coal necessarily supplied to her in a foreign port, although the person furnishing the coal knew of the charter, and knew that, according to its terms, the charterer was bound to furnish coal for the voyage.

[Cited in The Lucia B. Ives. Case No. 8,590; The Columbus. Id. 3,044; The William Cook, 12 Fed. 920; The India, 16 Fed. 263; The Bombay, 38 Fed. 513; The Stroma, 53 Fed. 283. Distinguished in Stephenson v. The Francis, 21 Fed. 725; The Pirate, 32 Fed. 488.]

2. Where the charterer merely hires the use of the vessel, and her navigation remains with the general owner, if the master, on the credit of the vessel, procures coal for her, in a foreign port, when she has none, the vessel is chargeable for the price of the coal.

[Cited in The Washington Irving, Case No. 17,244; The Metropolis, Id. 9,503; The India, 14 Fed. 479; The Sydney L. Wright, Case No. 6,082a; Stephenson v. The Francis, 21 Fed. 723; The Cumberland, 30 Fed. 451.]

[Appeal from the district court of the United States for the southern district of New York.]

In admiralty. This was a libel in rem, filed by Pennell Churchman and others, in the district court, against the steam-propeller City of New York, to recover the price of 130 tons of coal, furnished to that vessel at Porto Cabello, on the isthmus of Darien. The propeller, at the time the coal was furnished to her, was under charter to the firm of Haight & Palmer, of New York. The purchase price of the coal was $2,080. Captain Thompson, the agent of the libellants, who sold the coal, received from the purser of the propeller, on the sale, $1,000 in cash, and a draft on Haight & Palmer, for $1,080. The draft not being paid, this libel was filed, to recover the $1,080. The district court held that the sale was not made on the credit of the vessel, and dismissed the libel. [Case not reported.] From that decree the libellants appealed to this court.

Francis F. Marbury, for libellants.

George F. Betts and Charles Donohue, for claimants.

NELSON, Circuit Justice. 1. I am strongly inclined to think that Haight & Palmer, the charterers of the vessel in this case, are to be deemed owners of her for the voyage. If so, the purser of the vessel, who was their agent, was competent to bind her for the necessary supply of coal at Porto Cabello; and this, although the person furnishing it knew of the charter, and knew that, accord-

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

ing to its terms, the charterers were bound to furnish coal for the voyage. Upon any other rule, the master or agent of a vessel in distress, in a foreign port, would oftentimes find himself unable to procure the necessaries essential for his relief. The voyage might be broken up, for want of supplies, or the vessel might go to decay in port, for want of proper repairs. I have found no case where it has been held that this knowledge on the part of the person furnishing the supplies or making the repairs, under the circumstances stated, affects the right to charge the vessel as security for the payment. The right to charge the general owner personally, is a very different question.

2. But, admitting that the charterers were not owners for the voyage, and were but hirers of the use of the vessel to carry passengers and freight, and that the general owners and the possession and navigation of her, the charter party resting in covenant, and not in a letting of the vessel, the result must, in my judgment, be the same. The proof shows that the vessel was out of coal, and went to Porto Cabello, it may be properly said, in distress for supplies, without which she could not have performed her voyage. I cannot doubt that the coal, if procured by the master under such circumstances, is a charge upon the vessel, according to the settled maritime law. The claimants, it is true, seek to exonerate her upon the testimony of the purser, who was the agent of the charterers, that he, and not the master, contracted for the supply of the coal, and that the master, for himself and the vessel, repudiated the purchase. The master has not been examined, the defence in this respect being allowed to rest upon the evidence of the purser. He is contradicted by Captain Thompson, who made the sale. According to his evidence, all parties were given to understand, expressly, that the vessel would be looked to, in case the draft drawn on Haight & Palmer should not be paid. The purser contradicts himself in several parts of his evidence, and, in other respects, it is not calculated to inspire confidence. He testifies, in the first place, that Captain Thompson did not tell him, at the time he consented to take the draft, that he should look to the vessel if it was not paid; but afterwards he is obliged to admit that Captain Thompson did tell him so. He also testifies that he had sufficient funds on board to pay for the coal and for the other expenses of the voyage, but he afterwards shows that in this he was mistaken.

I think the evidence of Thompson entitled to the most credit; and, according to that, the master of the steamer participated, or should be regarded as participating, in the purchase. He was present when the contract was made for the coal, and when the draft for the balance of the purchase money was accepted; and Captain Thompson, according to his own evidence, agreed to accept

the draft only on condition that the ship should be liable if the draft was not paid at maturity. It is true, the master was silent, but the inference naturally drawn, under the circumstances, must have been, that he acquiesced in the condition.

3. The proofs show, that the sale was made and the draft taken under the expectation, on the part of Captain Thompson, that the vessel would be liable for the unpaid balance, if the draft was not paid at maturity. This is not contradicted by the evidence of the purser. That evidence seeks to establish the fact, that the master gave notice, at the time, that the vessel would not be considered as liable. On this point, in the absence of the testimony of the master, I think that of Captain Thompson entitled to the most weight, for the reasons already stated; and, according to that, the credit was given to the vessel.

I must, therefore, reverse the decree below, and decree that the vessel is chargeable for the balance due for the coal, with a reference to the clerk, if necessary, to ascertain the amount.